JONES, JUDGE:
Pursuant to agreement of counsel these claims were consolidated for purposes of hearing and decision. The claims are for personal injuries sustained in separate accidents occurring a few hours apart on March 8,1974, at the location of a Department of Highways construction project on State Route No. 35 near Winfield in Putnam County.
Claimant Thomas Edison Hale, 44 years of age, was employed by Hennis Freight Lines of Roanoke, Virginia, and was driving a tractor-trailer in a northerly direction on a dry road and in good weather. Hale had operated tractor-trailers for more than 18 years and his vehicle was approximately 57 feet long and had a gross weight of approximately 40,000 pounds. He had driven this road as many as three to six times a week over a period of 15 years. According to his testimony, at about 1:00 a.m. on said day he was driving at approximately 20 to 30 miles per hour when he reached the top of a gradual grade where the road leveled out and his headlights revealed a ditch, 18 inches to 2 feet deep, completely across the road, 20 to 30 feet in front of him. The entire length of his vehicle struck and passed over the ditch, coming to a stop about the length of the vehicle beyond. He was thrown against the steering wheel and the top of the cab. Hale drove' his vehicle about 10 miles to Pliney Truck Stop, where he called his employer and then called an ambulance. It was later determined that the *94 tractor-trailer had to be towed back to the owner because the frame was bent, the motor mounts broken and the engine cracked. An ambulance arrived and on the way back along the road Hale had traveled, he saw the claimant Wingate falling to the ground from the cab of his tractor-trailer, which had just struck the same ditch and had come to a stop. Wingate was placed in the ambulance and both claimants were taken to Thomas Memorial Hospital in South Charleston. Hale remained in the hospital for 2 V2 to 3 hours.
On the same night, at about 3:00 a.m., at the same place and under the same conditions, except for a possible variance in the depth of the ditch, claimant Larry Lee Wingate, 38 years of age, was driving a tractor-trailer owned by his employer, Superior Motor Express, of Gold Hill, North Carolina. He had driven tractor-trailers for approximately 15 years and over this road for about 7 years. His vehicle was approximately 55 feet long and was loaded with lumber, all with a gross weight of about 69,000 pounds. According to his testimony, Wingate had slowed to about 25 to 30 miles per hour upon approaching a sign warning of a dip or rough road which he had known of for several years. He was within 15 to 20 feet of the ditch when he first saw it, he struck the ditch, about 18 inches deep by his estimate, and was thrown about and against the top of the cab. He was able to bring the tractor-trailer to a stop, got out of the cab, fell to the ground and crawled to the front of the truck. There, almost immediately, he was picked up by the aforementioned ambulance driver and was taken, along with Hale, to the Thomas Memorial Hospital. He was discharged and returned to his home 8 days later. Upon cross-examination, Wingate admitted that he had answered a pre-trial interrogatory that he was traveling approximately 40 to 50 miles per hour as he approached the ditch; and then he asserted that he had no way of knowing how fast he was traveling at the time.
Both claimants testified that the only signs they saw were ones that had been along the highway for several years. They did not recall a blinker light or road construction signs. They both testified that they slowed down, knowing that they were approaching a rough place and dip in the road, which had long been marked by a warning sign. All witnesses agreed that Route 35 was a heavily traveled road with a large amount of truck traffic. Evidence regarding speed limits was conflicting and inconclusive.
Donald Wright, Sheriff of Putnam County, testified that he had driven south along the highway between 4:00 and 5:00 p.m. on March 7,1974, while the ditch was being dug, and that he returned *95 at about 9:00 p.m. when the work had stopped and the workmen had left the job. It looked to him like the ditch had been filled with gravel or similar material and he said it had been thrown out by traffic until the ditch was approximately 12 inches deep. He observed the blinker light about one-fourth mile from the ditch, but did not recall seeing road construction signs, and said there were no flares or “men working” signs near the project. Knowing the ditch was there, he struck it at about 15 miles per hour and said that was “too fast”. He returned to his office in Winfield where two or three telephone calls were received, reporting a “bad situation”, and notice thereof was given by his office to the Department of Highways.
The respondent’s general foreman on the project testified substantially as follows: A blinker “construction ahead” sign was placed about one mile away on either side of the ditch, and on the south side there was a reflector-type road construction sign at 1,000 feet and one at 500 feet, “men working” signs near the ditch, two flagmen until quitting time and flares at night, which he could not say were burning at the time of the accidents; that he had asked his superiors for flagmen around the clock until the work was finished but that no flagman was on duty at the times of the accidents; that the “men working” signs were laid down at night; that the ditch was not entirely across the road, but about 26 feet long overall and about 8 feet into the claimants’ right-hand lane; that the blacktop had been ripped up with a bulldozer over a strip about 8 feet wide and the ditch in which the drainpipe was laid was about 6Vz feet deep; that they used two truck loads of slag in filling the ditch, which was not enough, so the workmen finished the fill with pea gravel and sand; that the ditch was packed and .leveled with a bulldozer; that when he arrived at work the following morning, a flagman, who had been dispatched to the scene during the night, was on duty, and the ditch was about 18 inches deep; and that the County office of the respondent had sent the flagman to the job during the night because of the hazardous situation.
While the filling of the ditch by the respondent’s employees may have appeared to them to be sufficient for the duration of the night, it obviously was a temporary job and was not stable enough to withstand the heavy traffic to which it was subjected. The inherent danger was such, in our opinion, that only the stationing of flagmen would have been a sufficient safeguard under- the circumstances. The fact that the respondent’s employees ran out of slag and substituted less stable material, pea gravel and sand, to *96 finish the fill, should have alerted them to the apparently inevitable result. Sheriff Wright’s testimony establishes that much of the fill had been knocked out of the ditch by traffic not long after work was finished, and the respondent’s general foreman admitted that the ditch was 18 inches deep before 7:00 o’clock the next morning. Assuming that the “road construction” signs were properly in place, the claimants came upon this hazardous condition suddenly and, we believe, without sufficient warning. There is nothing to show that either of them was driving at an unreasonable speed, or that they failed to take any proper precaution or defensive measure. We find that the respondent was negligent; and we cannot say that the claimants were guilty of such conduct as would bar their recovery.
With regard to damages, we have considered the testimony of the claimants relating to their injuries, all medical evidence and the claimants’ loss of earnings as shown in the record. Both claimants were in good health at the time of the accidents. While both claim limitations of their activities, they have resumed their former employment.
Claimant Hale sustained injury to his cervical spine, with continuing residual strain of the muscles and ligaments of his neck, not of a permanent nature, and his physician confirms that he is still suffering from tinnitus (hearing noises) in the left ear, which may not be reversible, and that some loss of hearing has resulted. He missed five weeks’ work and his loss of wages was $2,082.13. Medical and hospital charges amounted to $679.70. The Court assesses his damages at $8,250.00.
Claimant Wingate sustained a fracture of the second lumbar vertebrae of his spine, and while the prognosis is unclear, he is not expected to attain final recovery for several years. He was confined to the hospital for eight days and was unable to return to work for about eight months. His loss of wages was approximately $3,750.00, and his medical and hospital bills totalled $794.30. We have assessed his damages at $11,000.00.
In consideration of the foregoing, the Court hereby awards the claimant, Thomas Edison Hale, the sum of $8,250.00, and the claimant, Larry Lee Wingate, the sum of $11,000.00.
Awards: Thomas Edison Hale — $8,250.00.
Larry Lee Wingate — $11,000.00.